DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**FEDERAL INSURANCE COMPANY, HAROLD PEERENBOOM,** and
**WILLIAM MARVIN DOUBERLEY,**
Appellants,

v.

**ISAAC "IKE" PERLMUTTER** and **LAURA PERLMUTTER,**
Appellees.

Nos. 4D2022-1558, 4D2022-1560, and 4D2022-1562

[December 13, 2023]

Consolidated appeals of nonfinal orders from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Gerard Joseph Curley, Judge; L.T. Case No. 50-2013-CA-015257.

Kenneth R. Drake of DeMahy Labrador Drake Cabeza, Coral Gables, for appellant Federal Insurance Company.

Jordan S. Cohen, Ethan A. Arthur, and Victoria N. DeLeon of Wicker Smith O'Hara McCoy & Ford, P.A., Fort Lauderdale, for appellant Harold Peerenboom.

Daniel M. Bachi of Sellars, Marion & Bachi, P.A., West Palm Beach, for appellant William Marvin Douberley.

Roy Black and Jared M. Lopez of Black, Srebnick, Kornspan & Stumpf, P.A., Miami, and Elliot B. Kula and William D. Mueller of Kula & Associates, P.A., Miami, and Joshua E. Dubin of Joshua E. Dubin, P.A., Miami, for appellees.

*EN BANC*
*ON MOTION FOR CERTIFICATION AND*
*SUA SPONTE REHEARING EN BANC*

CONNER, J.

We grant the appellees' motion for certification of conflict and question of great public importance, sua sponte proceed with rehearing en banc, withdraw our opinion dated September 27, 2023, and issue the following in its place.

In this consolidated appeal, Federal Insurance Company ("Federal"), Harold Peerenboom ("Peerenboom"), and William Douberley ("Douberley") (collectively,

1

"the Appellants") separately appeal from trial court orders granting Isaac and Laura Perlmutter's ("the Perlmutters") motions to amend their counterclaims to seek punitive damages from the Appellants. We reverse because the record evidence was insufficient to permit claims for punitive damages. To explain our decision, we examine the substantive and procedural requirements for motions to amend seeking punitive damages. We also apply those requirements to our review of the trial court orders in this case.

## ***Part 1****: Background*

The Perlmutters and Peerenboom lived in a residential community in which a dispute arose over retaining the community tennis instructor. The dispute resulted in the tennis instructor filing a defamation suit to which Peerenboom was eventually added as a defendant. Peerenboom notified his insurance carrier, Federal, about the tennis instructor's defamation suit. Federal designated Douberley's law firm as Federal's in-house counsel to defend Peerenboom in the tennis instructor's suit.

During the tennis instructor's suit, Peerenboom's family, friends, neighbors, and colleagues received a series of "hate mail" letters falsely accusing Peerenboom of child molestation and murder. Peerenboom suspected the Perlmutters were involved in the hate mail because, a year earlier, Isaac Perlmutter had circulated negative news articles about Peerenboom. Believing he was the victim of a crime, Peerenboom reported the hate mail to law enforcement and postal investigators and hired private investigators to develop information about who had sent the hate mail.

As part of that investigation, Peerenboom and Douberley surreptitiously obtained the Perlmutters' DNA to compare against DNA obtained from the hate mail. Peerenboom then reported to the police and media that the DNA results had linked the Perlmutters to the hate mail campaign.

Peerenboom later filed a complaint against the Perlmutters raising various causes of action related to the sending of the hate mail.

Upon learning that Peerenboom had surreptitiously tested their DNA, the Perlmutters asserted a counterclaim against the Appellants. In their counterclaim, the Perlmutters alleged conversion and civil theft of their genetic information; abuse of process for issuing subpoenas upon them for improper purposes; defamation for false reports of their involvement in sending the letters; invasion of privacy for the surreptitious collection, testing, and reporting of their DNA; and civil conspiracy to defame them and falsely implicate them in criminal conduct.

The Perlmutters' intentional tort counts relied generally upon section 760.40, Florida Statutes (2013), which at the time[1] pertinently stated:

> (a)  Except for purposes of criminal prosecution, except for purposes of determining paternity as provided in s. 409.256 or s. 742.12(1), and except for purposes of acquiring specimens as provided in s. 943.325, DNA analysis may be performed only with the informed consent of the person to be tested, and the results of such DNA analysis, whether held by a public or private entity, are the exclusive property of the person tested, are confidential, and may not be disclosed without the consent of the person tested. . . .

> (b)  A person who violates paragraph (a) is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

§ 760.40(2), Fla. Stat. (2013).[2]

The Perlmutters later moved to amend their counterclaims to seek punitive damages from the Appellants.  The Appellants responded in opposition.  After a hearing on the Perlmutters' motions to amend, the trial court entered the separate orders, now on appeal, granting the motions to amend as to each of the Appellants.

The first order, granting the punitive damages motion against Peerenboom and Douberley, described the Perlmutters' proffered evidence in detail.  The trial court found the Perlmutters had made a reasonable evidentiary showing in support of the motion.

The second order, granting the punitive damages motion against Federal, likewise detailed the proffered evidence and found: (1) Douberley committed "intentional misconduct" as defined in section 768.72(2)(a), Florida Statutes (2013); (2) Douberley was Federal's employee; (3) Federal "actively and knowingly participated" in Douberley's intentional misconduct; and (4) Federal "knowingly condoned, ratified, or consented to" Douberley's intentional misconduct.  The trial court again found the Perlmutters made a reasonable evidentiary showing in support of the motion.  More specifically, the trial court permitted the

---

[1] In 2021, section 760.40 was amended and subsection (2)(b), the misdemeanor provision quoted below, was removed.  Simultaneously, the legislature created section 817.5655, Florida Statutes (2021), to criminalize DNA testing and reporting results without the donor's consent, with limited exceptions.

[2] Notably, as the trial court correctly ruled, the Perlmutters could not sue directly for violation of section 760.40, as the statute did not provide for a private cause of action. We also note the statute in effect at the time did not provide for punitive damages.

Perlmutters to seek punitive damages from Federal based on section 768.72(3)(a) and (b), Florida Statutes (2013).[3]

The Appellants separately gave notice of appeal. We have consolidated all three appeals for our review.

**_Part 2_**_: Statute, Rule, and Caselaw Applicable to Pretrial Orders Ruling on Motions to Amend to Assert Punitive Damages_

*A. Section 768.72 and Florida Rule of Civil Procedure 1.190*

Section 768.72, Florida Statutes (2013), and Florida Rule of Civil Procedure 1.190(a) and (f) control the Perlmutters' entitlement to punitive damages and establish the basic substantive and procedural requirements for such an award. Both the statute and the rule require parties to initiate the process by moving to amend the complaint or counterclaim. § 768.72(1), Fla. Stat. (2013); Fla. R. Civ. P. 1.190(f). In other words, a complaint or counterclaim cannot plead entitlement to punitive damages without prior court approval.

The primary foundational requirement under both the statute and the rule is "a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." § 768.72(1), Fla. Stat. (2013); Fla. R. Civ. P. 1.190(f). Section 768.72 pertinently provides:

> (1) In any civil action, no claim for punitive damages shall be permitted unless <u>there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages</u>. The claimant may move to amend her or his complaint to assert a claim for punitive

---

[3] The trial court's orders permitting amendment for punitive damages claims made detailed written findings and explanations for its rulings. We agree with the Fifth District that "the trial court, serving as a gatekeeper, is required to make an affirmative finding that [movant] has made a 'reasonable showing by evidence,' which would provide a 'reasonable evidentiary basis for recovering such damages'" if the motion to amend is granted. *Varnedore v. Copeland*, 210 So. 3d 741, 747-48 (Fla. 5th DCA 2017) (citations omitted); *see also Petri Positive Pest Control, Inc. v. CCM Condo. Ass'n, Inc.*, 174 So. 3d 1122, 1122 (Fla. 4th DCA 2015) (reversing amendment to plead punitive damages where neither the trial court's verbal comments nor written order indicated whether it found the plaintiff demonstrated a reasonable basis for seeking punitive damages). While not mandatory under Florida Rule of Civil Procedure 1.190, we encourage trial courts to identify on the record (preferably in writing) the evidence presented by the movant that satisfied the evidentiary showing, or the evidence presented by the opposing party that defeated the movant's entitlement. Without an affirmative finding and identification of evidence supporting the ruling, appellate courts will be significantly hampered in their review of whether the trial court properly performed its gatekeeping function.

damages as allowed by the rules of civil procedure. The rules of civil procedure shall be liberally construed so as to allow the claimant discovery of evidence which appears reasonably calculated to lead to admissible evidence on the issue of punitive damages. No discovery of financial worth shall proceed until after the pleading concerning punitive damages is permitted.

(2) A defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence. As used in this section, the term:

(a) "Intentional misconduct" means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.

(b) "Gross negligence" means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

§ 768.72(1)-(2), Fla. Stat. (2013) (emphasis added). Rule 1.190 similarly provides:

(a) Amendments. . . . If a party files a motion to amend a pleading, the party shall attach the proposed amended pleading to the motion. Leave of court shall be given freely when justice so requires.

. . . .

(f) Claims for Punitive Damages. A motion for leave to amend a pleading to assert a claim for punitive damages shall make a reasonable showing, by evidence in the record or evidence to be proffered by the claimant, that provides a reasonable basis for recovery of such damages. The motion to amend can be filed separately and before the supporting evidence or proffer, but each shall be served on all parties at least 20 days before the hearing.

Fla. R. Civ. P. 1.190(a), (f) (emphasis added).

We now discuss caselaw interpreting section 768.72's and rule 1.190's substantive and procedural requirements regarding punitive damages motions.

5

*B. The Trial Court's Gatekeeping Function*

In discussing the caselaw, we begin with the overarching concept of the trial court's gatekeeping function.

In *Globe Newspaper Co. v. King*, 658 So. 2d 518 (Fla. 1995), our supreme court said:

> We read section 768.72 to create a substantive legal right not to be subject to a punitive damages claim and ensuing financial worth discovery until the trial court makes a determination that there is a reasonable evidentiary basis for recovery of punitive damages.
>
> . . . .
>
> The plain meaning of section 768.72 now requires a plaintiff to provide the court with a reasonable evidentiary basis for punitive damages before the court may allow a claim for punitive damages to be included in a plaintiff's complaint. To allow punitive damages claims to proceed as before [(reviewable after final judgment)] would render section 768.72 meaningless.

*Id.* at 519-20 (emphasis added).

Even before *Globe Newspaper*, the district courts clearly stated trial courts bore the responsibility to determine whether juries can consider punitive damages claims. *See, e.g., Taylor v. Gunter Trucking Co., Inc.*, 520 So. 2d 624 (Fla. 1st DCA 1988) (listing Florida Supreme Court cases supporting the trial court's entry of summary judgment in favor of defendants on a punitive damages claim, and noting the focus is on whether evidence shows punitive damages could properly be awarded by a jury). The caselaw also explained:

> When claims for punitive damages are made, the respective provinces of the court and jury are well defined. The court is to decide at the close of evidence whether there is a legal basis for recovery of punitive damages shown by any interpretation of the evidence favorable to the plaintiff.

*Haynes v. Arman*, 192 So. 3d 546 (Fla. 5th DCA 2016) (emphasis added) (quoting *Wackenhut Corp. v. Canty*, 359 So. 2d 430, 435–36 (Fla. 1978)). Thus, the early caselaw established a gatekeeping role for trial courts regarding entitlement to punitive damages.

Post-*Globe Newspaper*, this Court and others specifically acknowledged the trial court's "gatekeeping" function. In *Bistline v. Rogers*, 215 So. 3d 607 (Fla.

6

4th DCA 2017), we recognized *Globe Newspaper*'s clear statement that section 768.72 created "a substantive legal right not to be subject to a punitive damages claim and ensuing financial worth discovery until the trial court makes a determination that there is a <u>reasonable evidentiary basis</u> for recovery of punitive damages." *Id.* at 610 (emphasis added). We specifically opined the statute meant the trial courts have a "gatekeeping" role to preclude a punitive damages claim where no reasonable evidentiary basis for recovery exists. *Id.* at 611. Other district courts have similarly identified a trial court's gatekeeping function in allowing punitive damages claims. *See Varnedore*, 210 So. 3d at 745 ("In order to perform its function as a gatekeeper, the trial court must understand the specific claim proposed by the plaintiff that may justify an award of punitive damages."); *Watt v. Lo*, 302 So. 3d 1021, 1025 (Fla. 1st DCA 2020) (acknowledging the trial court understood its gatekeeping function, and, in ruling on the plaintiff's motion to amend, made the determination required by the statute, the rule, and *Globe Newspaper*).[4]

We now turn to some additional legal principles regarding the trial court's responsibilities in ruling on a motion to amend.

*C. The Pleading and the Evidentiary Showing Must Match*

"Given the nature of the applicable statute and rule, the court must consider both <u>the pleading component</u> and <u>the evidentiary component</u> of each motion to amend to assert punitive damage claims." *Varnedore*, 210 So. 3d at 744 (emphasis added) (citing *Henn v. Sandler*, 589 So. 2d 1334, 1335-36 (Fla. 4th DCA 1991)). Thus, once the trial court determines the proposed amended complaint states sufficient allegations to plead a proper punitive damages claim, the trial court must next determine whether the movant has established a reasonable factual basis for its punitive damages claim consistent with the allegations in the amended complaint. *Id.* at 746. If the evidentiary showing does not match the amended complaint's allegations, the trial court should not permit the punitive damages claim. *See Desanto v. Grahn*, 362 So. 3d 247, 248-50 (Fla. 4th DCA 2023) (reversing order granting leave to amend because the allegations of the motion to amend did not match any record evidence); *HRB Tax Grp., Inc. v. Fla. Investigation Bureau, Inc.*, 360 So. 3d 1159 (Fla. 4th DCA 2023) (reversing order permitting amendment because the trial court improperly considered allegations and evidence not relevant to the claim for which punitive damages were sought).

---

[4] Although not explicitly argued below or on appeal, but more fully discussed herein, we also note that, in addition to the requirements imposed by section 768.72 and rule 1.190(a) and (f), the gatekeeping function requires the trial court to deny a motion to amend if the opposing party's conduct is not alleged or shown by a proper <u>pretrial</u> evidentiary showing to be sufficiently reprehensible and outrageous to merit punitive damages.

7

*D. Evidentiary Showing by All Parties*

The first sentence of section 768.72(1), Florida Statutes (2013), provides: "In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing <u>by evidence in the record or proffered by the claimant</u> which would provide a reasonable basis for recovery of such damages." § 768.72(1), Fla. Stat. (2013) (emphasis added).

We conclude the phrase "by the claimant" plainly modifies only its nearest referent phrase "or proffered" and not the prior phrase "in the record." *See Acad. for Positive Learning, Inc. v. Sch. Bd. of Palm Bch. Cnty.*, 315, So. 3d 675, 680 (Fla. 4th DCA 2021) ("The [nearest-reasonable-referent] canon holds simply that, whether coming before or after what is modified, modifiers (adjectives, adverbs, prepositional phrases, restrictive clauses) <u>should be read as modifying the nearest noun, verb, or other sentence element to which they can reasonably be said to pertain</u>." (emphasis added) (citation omitted)).

To interpret the phrase "by the claimant" to reasonably pertain to both the phrase "or proffered" and the phrase "in the record," the phrase "by the claimant" must be read as able to apply—independently—to both phrases.  However, independently applying the phrase "evidence in the record" to the phrase "by the claimant" would result in the conjoined phrase "evidence in the record by the plaintiff."  That conjoined phrase is not susceptible to a sound interpretation.

The only reasonable way to read section 768.72(1)'s first sentence is to recognize the aforementioned phrases as referring to two separate categories of evidence:  evidence "in the record" and evidence "proffered by the claimant."  The latter category, by its plain language, specifies "the claimant" as the proffered evidence's source.  The former category, "evidence in the record," being non-specific as to the record evidence's source, plainly permits the source of that evidence to be both the claimant and any opponent.

Thus, applying section 768.72(1)'s plain language, we hold that a trial court must consider the evidentiary showing <u>by all parties</u> at the hearing on the motion to amend, that is, evidence "in the record" and evidence "proffered by the claimant."[5]

---

[5] Although not an issue in the instant appeals, we have previously determined section 768.72 only authorizes a proffer and does not require a full evidentiary hearing with witness testimony. *Strasser v. Yalamanchi*, 677 So. 2d 22, 23 (Fla. 4th DCA 1996); *see also Est. of Despain v. Avante Grp., Inc.*, 900 So. 2d 637, 642 (Fla. 5th DCA 2005) ("[A]n evidentiary hearing where witnesses testify and evidence is offered and scrutinized under the pertinent evidentiary rules, as in a trial, is <u>neither contemplated nor mandated</u> by the statute in order to determine whether a reasonable basis has been established to plead punitive damages." (emphasis added)).

*E. Reasonable Showing of Reasonable Evidentiary Basis by the Movant*

To support the motion to amend, the movant's pretrial evidentiary showing (sworn statements and authenticated records) must "provide the court with a reasonable evidentiary basis for punitive damages." *Globe Newspaper*, 658 So. 2d at 520.[6] Thus, a "reasonable showing by evidence" of "a reasonable basis" for punitive damages means the movant must demonstrate the movant will be able to produce competent, substantial evidence at trial upon which a rational trier of fact could find that the defendant specifically intended to engage in intentional or grossly negligent misconduct that was outrageous and reprehensible enough to merit punishment.

Additionally, because statutory provisions must be read *in pari materia*, in ruling on a motion to amend, we interpret section 768.72(1) and (2) to require the trial court to make a <u>preliminary determination</u> of whether a reasonable jury, viewing the totality of proffered evidence in the light most favorable to the movant, could find by clear and convincing evidence that punitive damages are warranted.[7] We make clear that the preliminary determination by the trial court considers the evidence presented by all parties and gives the movant the benefit of all reasonable inferences.[8] *Varnedore*, 210 So. 3d at 747 (noting movant's

---

[6] We agree with the Fifth District that "the term 'proffer' for purposes of rule 1.190(f) refers only to timely filed documents and excludes oral representations of additional evidence made during the hearing." *Varnedore*, 210 So. 3d at 747. Additionally, "the trial court cannot properly consider plaintiff's counsel's oral or other proffers of evidence which are first presented during the hearing." *Id.*; *see also WG Evergreen Woods SH, LLC v. Fares*, 207 So. 3d 993, 996 (Fla. 5th DCA 2016) (noting the similarity between rules 1.190(f) and 1.510(c)).

[7] We note that although the clear and convincing evidence standard can be met when evidence is <u>inconsistent or conflicting</u>, the standard cannot be met when the evidence is <u>ambiguous</u>. *See In re Guardianship of Browning*, 543 So. 2d 258, 273 (Fla. 2d DCA 1989) ("It is possible for the evidence . . . to be clear and convincing, even though some evidence may be inconsistent. Likewise, it is possible for the evidence to be uncontroverted, and yet not be clear and convincing."); *Westinghouse Elec. Corp., Inc. v. Shuler Bros., Inc.*, 590 So. 2d 986, 988 (Fla. 1st DCA 1991) (recognizing that conflicting evidence can meet the standard, but ambiguous evidence cannot); *Brewer v. Fla. Dep't of Health, Bd. of Nursing*, 268 So. 3d 871, 873 (Fla. 1st DCA 2019) ("The clear and convincing evidence standard precludes ambiguous evidence." (citing *Westinghouse Elec.*, 590 So. 2d at 988)).

[8] As we point out below, with regards to inferences to be drawn from the movant's evidentiary showing, the stacking of inferences is not permitted. When the trial court makes a preliminary determination, the opposing party's ability to present evidence that inferentially <u>conflicts</u> with the movant's evidence is not sufficient to defeat a motion to amend. However, an opposing party's evidence may demonstrate that the movant's inferences from the evidence are <u>ambiguous</u> or erroneous.

counsel is free to argue inferences that may be drawn from the timely filed evidence and proffers).

We stress that the preliminary determination of whether the movant made a reasonable showing by evidence of a reasonable basis for allowing a punitive damages claim is to be made <u>without</u> weighing evidence or witness credibility.[9] *See Varnedore*, 210 So. 3d at 747 ("After all, the decision of whether to grant the motion to add punitive damages will be based, at least in part, upon the trial court's determination of whether a reasonable jury could infer from the evidence and proffer that a defendant's conduct amounted to reckless or careless indifference to the plaintiff's life or safety.").

### ***Part 3***: *Application of the Substantive and* *Procedural Requirements to the Instant Case*

Having reviewed the above substantive and procedural requirements, we now apply those requirements to this case's facts and the orders granting the Perlmutters' motions to amend seeking punitive damages from the Appellants.

Our review is de novo. *See Cleveland Clinic Fla. Health Sys. Nonprofit Corp. v. Oriolo*, 357 So. 3d 703, 705 (Fla. 4th DCA 2023) (reviewing "de novo the trial court's purely legal ruling that plaintiff made a 'reasonable showing' under section 768.72 to recover punitive damages" (citing *Holmes v. Bridgestone/Firestone, Inc.*, 891 So. 2d 1188, 1191 (Fla. 4th DCA 2005))).

### A.     *Peerenboom's and Douberley's Arguments*[10]

The Perlmutters' amended counterclaim asserts punitive damages liability based on intentional misconduct. Under section 768.72(1) and (2), a punitive damages claim for intentional misconduct requires a <u>pleading and evidentiary showing</u> demonstrating "the defendant had <u>actual knowledge of the wrongfulness of the conduct</u> and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage." § 768.72(1), (2), Fla. Stat. (2013) (emphasis added). In other words, section 768.72(2) requires an

---

[9] In *Bistline*, we said that "an evaluation of the evidentiary showing required by section 768.72 does not contemplate the trial court simply accepting the allegations in a complaint or motion to amend as true." 215 So. 3d at 610. Our point in *Bistline* was that the trial court's gatekeeping function requires more than simply assuming all of the movant's allegations in the amended complaint are true—the standard when ruling on a motion to dismiss for failure to state a cause of action. Instead, we opined the trial court must evaluate the evidentiary showing by the movant. *Id.*

[10] Both Peerenboom and Douberley raise additional arguments besides the ones which we discuss above, but we do not address those arguments.

evidentiary showing of <u>specific intent</u>, not general intent, to knowingly engage in wrongful conduct.

Peerenboom argues the trial court erred in granting the Perlmutters' motion to amend because the trial court failed to use the proposed amended counterclaim as the framework for analysis. Peerenboom points out that "th[e] vital gatekeeping function requires trial courts to consider the movant's proposed amended pleading, and determine whether it has alleged a basis for punitive damages." Additionally, he argues the trial court failed to hold the Perlmutters to their pleadings and permitted a punitive damages amendment based on unpled conduct. Peerenboom and Douberley argue the Perlmutters' proffers do not demonstrate intentional misconduct "[rising] to a level of culpability sufficient to support punishment" or "equivalent to that required for criminal manslaughter in order to plead punitive damages."

The Perlmutters' evidentiary proffers are ambiguous in terms of establishing specific intent by Peerenboom and Douberley to knowingly engage in wrongful conduct, and do not demonstrate intentional misconduct "[rising] to a level of culpability sufficient to support punishment" or "equivalent to that required for criminal manslaughter in order to plead punitive damages." The thrust of the Perlmutters' theory of intentional wrongdoing was an intent to fabricate false evidence to connect the Perlmutters to the hate mail. However, the evidence proffered does not support the theory without the stacking of circumstantial inferences. Such evidence could never meet the clear and convincing evidence standard at trial. *See Broward Exec. Builders, Inc. v. Zota*, 192 So. 3d 534, 537 (Fla. 4th DCA 2016) ("The purpose of this rule against stacking inferences is 'to protect litigants from verdicts based on conjecture and speculation.'" (quoting *Stanley v. Marceaux*, 991 So. 2d 938, 940 (Fla. 4th DCA 2008))).

Because of the ambiguity of the evidence as to specific intent to intentionally engage in wrongdoing, we agree with Peerenboom and Douberley that the Perlmutters' evidentiary showing was insufficient. However, even conceding that the Perlmutters' proffer demonstrated evidence that could lead a jury to conclude Peerenboom and Douberley specifically intended to engage in acts constituting misdemeanors by testing DNA and disclosing the results, we conclude there was no proffered evidentiary showing that Peerenboom and Douberley were trying to develop DNA information about either of the Perlmutters to invade their privacy <u>beyond trying to investigate the hate mail campaign</u>. Thus, again, we conclude the evidentiary showing was insufficient.

As the United States Supreme Court, the Florida Supreme Court, and this Court have said, "[punitive damages] are not compensation for injury. Instead, they are private fines levied by civil juries to punish <u>reprehensible conduct</u> and to deter its future occurrence." *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001) (emphasis added) (quoting *Gertz v. Robert Welch, Inc.*,

418 U.S. 323, 350 (1974)); *see also Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246, 1262 (Fla. 2006) (describing punitive damages as "'private fines' intended to punish the defendant and to deter future wrongdoing"); *James Crystal Licenses, LLC v. Infinity Radio Inc.*, 43 So. 3d 68, 76 (Fla. 4th DCA 2010) (observing that historically punitive damages were "justified as punishment for extraordinary wrongdoing"). As the Supreme Court in *Cooper Industries* observed, "[I]n deciding whether [the punitive damages] line has been crossed, we have focused on the same general criteria: <u>the degree of the defendant's reprehensibility or culpability</u>." 532 U.S. at 435 (emphasis added).

"[L]ong-established precedent dictates that actions which deserve punitive sanctions involve outrageous conduct, malicious motive, or wrongful intention." *William Dorsky Assocs., Inc. v. Highlands Cnty. Title & Guar. Land Co.*, 528 So. 2d 411, 412 (Fla. 2d DCA 1988). "[P]unitive damages are reserved for truly 'culpable conduct,'" where the conduct is "so outrageous in character, and so extreme in degree . . . [that] the facts [of the case] to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Oriolo*, 357 So. 3d at 706; *see also W.R. Grace & Co.—Conn v. Waters*, 638 So. 2d 502, 503 (Fla. 1994) ("Punitive damages are appropriate when a defendant engages in conduct which is fraudulent, malicious, deliberately violent or oppressive, or committed with such gross negligence as to indicate a wanton disregard for the rights of others."); *Lee Cnty. Bank v. Winson*, 444 So. 2d 459, 463 (Fla. 2d DCA 1983) ("Punitive damages may be properly awarded only where a tort involves malice, moral turpitude, or wanton and outrageous disregard of a plaintiff's rights." (citing *Winn & Lovett Grocery Co. v. Archer*, 171 So. 214 (Fla. 1936))).

We conclude, as a matter of law based on the facts of this case, that Peerenboom's conduct in testing and reporting DNA results, under the circumstances of the hate mail campaign leading to a law enforcement investigation, did not meet the threshold of reprehensible or outrageous conduct. Thus, the Perlmutters' counterclaims could not be amended to assert punitive damages against Peerenboom or Douberley.

We additionally agree with Peerenboom's and Douberley's arguments that because the individual claims against them fail, the conspiracy claims against them also fail. *See Palm Beach Cnty. Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So. 3d 1090, 1096 (Fla. 4th DCA 2009) ("Since the counts regarding the goals of the conspiracy—defamation and tortious interference—fail, so too the conspiracy count must fail.").

Finally, we conclude the evidentiary proffer was insufficient to show Peerenboom intentionally and wrongfully disseminated DNA test results linking Laura Perlmutter to the hate mail while ignoring that the DNA sample was possibly compromised or that Peerenboom's disgruntled prior employee could

have been the author of the hate mail. We again conclude the evidentiary showing presented <u>ambiguous</u> evidence in that regard.

For the above reasons, we reverse the trial court's order granting the Perlmutters' motion to amend to seek punitive damages against Peerenboom and Douberley. Our decision should not be construed to preclude an award of <u>compensatory damages</u>, by a preponderance of the evidence burden of proof, for any intentional tort which the jury determines Peerenboom or Douberley may have committed. *See Bistline*, 215 So. 3d at 610 (recognizing that record evidence may support an intentional tort, but not necessarily a punitive damages award).

## B.      *Federal's Arguments*

Regarding the liability of an employer or corporation for punitive damages imposed for the conduct of an employee or agent, section 768.72, Florida Statutes, provides:

> In the case of an employer, principal, corporation, or other legal entity, punitive damages may be imposed for the conduct of an employee or agent only if the conduct of the employee or agent meets the criteria specified in subsection (2) and:
>
> (a) The employer, principal, corporation, or other legal entity actively and knowingly participated in such conduct;
>
> (b) The officers, directors, or managers of the employer, principal, corporation, or other legal entity knowingly condoned, ratified, or consented to such conduct; or
>
> (c) The employer, principal, corporation, or other legal entity engaged in conduct that constituted gross negligence and that contributed to the loss, damages, or injury suffered by the claimant.

§ 768.72(3), Fla. Stat. (2013).

"In order to impose direct liability for punitive damages on a corporation, there must be a showing of willful and malicious action on the part of a managing agent of the corporation." *Partington v. Metallic Eng'g Co., Inc.*, 792 So. 2d 498, 501 (Fla. 4th DCA 2001) (citing *Schropp v. Crown Eurocars, Inc.*, 654 So. 2d 1158 (Fla. 1995)). "[A] managing agent is an individual like a 'president [or] primary owner' who holds a 'position with the corporation which might result in his acts being deemed the acts of the corporation.'" *Dominguez*, 295 So. 3d at 1205 (citation omitted). In other words, a managing agent is more than a mid-level employee with some, but limited, managerial authority; instead, a managing

13

member makes policy decisions for the corporation.  *See id.* at 1206 (holding defendant corporation's regional supervisor, who had "significant managerial power" over regional program but did not make policy decisions, was not managing agent for purpose of establishing direct corporate liability for punitive damages).

As a preliminary matter, because we conclude a punitive damages claim against Douberley was improper, we also conclude the trial court erred in allowing the counterclaims to be amended to seek punitive damages against Federal under section 768.72(3)(b).  As we said in *Oriolo*, "[g]enerally, before one may infer that a principal ratified an unauthorized act of his agent, the evidence must demonstrate that the principal was fully informed—beyond having simple constructive knowledge—and that he approved of the act."  357 So. 3d at 707 (internal quotation marks and alterations omitted).  The evidentiary proffer did not unambiguously show that a Federal principal was fully informed of (beyond simple constructive knowledge) and approved Douberley's acts.

Additionally, we agree with Federal's argument that the Perlmutters did not allege or proffer an evidentiary showing demonstrating that Douberley, or Federal's claims manager to whom Douberley reported, held a position as a corporate policymaker which might result in conduct deemed to be Federal's acts, or that Federal "actively and knowingly participated" in Douberley's intentional misconduct to merit punitive damages under section 768.72(3)(a).

For the above reasons, we also reverse the trial court's order granting the Perlmutters' motion to amend to seek punitive damages against Federal.

### **Part 4**: *Conclusion*

Having determined the trial court improperly granted the Perlmutters' motions to amend their counterclaims to seek punitive damages against the Appellants due to an insufficient evidentiary showing of a reasonable basis to award punitive damages, we reverse and remand for the trial court to vacate the nonfinal orders granting amendment.

In reaching our conclusion, we certify conflict with the Second District's and the Fifth District's opinions in the following cases:  *Deaterly v. Jacobson*, 313 So. 3d 798 (Fla. 2d DCA 2021); *Wiendl v. Wiendl*, No. 2D22-3464, 2023 WL 5311941 (Fla. 2d DCA Aug. 18, 2023); *Estate of Despain v. Avante Group, Inc.*, 900 So. 2d 637, 642 (Fla. 5th DCA 2005); *Werner Enterprises, Inc. v. Mendez*, 362 So. 3d 278 (Fla. 5th DCA 2023); and *Cook v. Florida Peninsula Insurance Co.*, No. 5D22-2334, 2023 WL 5156375 (Fla. 5th DCA Aug. 11, 2023).

We also certify to the Florida Supreme Court the following question of great public importance:

14

On a motion to amend to add a punitive damages claim, does section 768.72(1) and (2), Florida Statutes, when read *in pari materia*, require a trial court to make a <u>preliminary determination</u> of whether a reasonable jury, viewing the totality of evidence identified in support of or opposition to the motion, and in the light most favorable to the movant, could find by clear and convincing evidence that punitive damages are warranted?

*Reversed and remanded with instructions; conflict certified; question of great public importance certified.*

KLINGENSMITH, C.J., DAMOORGIAN, CIKLIN, GERBER, LEVINE, FORST, and KUNTZ, JJ., concur.
ARTAU, J., concurs specially with opinion.
MAY, J., concurs in result only with opinion.
WARNER, J., dissents with opinion, in which GROSS, J., joins.
GROSS, J., dissents with opinion, in which WARNER, J., joins.

ARTAU, J., concurring specially.

The en banc majority opinion cites *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001), for the proposition that our federal constitution establishes a "line" that should not be "crossed" when allowing a punitive or exemplary damages claim to be pled without sufficient proof of the "defendant's reprehensibility or culpability."

I disagree with the suggestion the citation to *Cooper* makes that the Fourteenth Amendment provides substantive due process protection from a punitive damages claim.

As Justice Scalia explained in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), the Fourteenth Amendment's Due Process Clause is not "a secret repository of substantive guarantees against 'unfairness'—neither the unfairness of an excessive civil compensatory award, nor the unfairness of an 'unreasonable' punitive award" is protected by the Fourteenth Amendment. *Id.* at 598-99 (Scalia, J., dissenting). Rather, "[w]hat the Fourteenth Amendment's procedural guarantee assures is an opportunity to contest the reasonableness of a damages judgment in state court; but there is no federal [substantive due process] guarantee*"* protecting a defendant from a punitive damages claim. *Id.* at 599 (citing *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 471 (1993) (Scalia, J., concurring in judgment)).

In other words, the original understanding of the Fourteenth Amendment did not include protection from a punitive or exemplary damages claim. Indeed,

15

"history fails to disclose any pre-constitutional protection against" punitive damages which were indisputably recognized at common law prior to ratification of the Fourteenth Amendment. A. Benjamin Spencer, *Due Process and Punitive Damages: The Error of Federal Excessiveness Jurisprudence*, 79 S. Cal. L. Rev. 1085, 1135-36 (2006); *see also Wilkes v. Wood* (1763) 98 Eng. Rep. 489 (KB) [498] (appeal taken from Eng.) ("Damages are designed not only as a satisfaction to the injured person, but likewise as a punishment[.]"); *Huckle v. Money* (1763) 95 Eng. Rep. 768 (KB) [769] (appeal taken from Eng.) (recognizing "exemplary damages").

"Had the Founders intended to limit punitive damages . . . in civil cases in the same manner that they limited fines and punishments imposed in actions initiated by the government, 'it cannot be that they would not have explicitly said so.'" Spencer, *supra*, at 1135 (quoting *Twp. of Pine Grove v. Talcott*, 86 U.S. 666, 674-75 (1873)). Moreover, "[i]t makes little sense to say that the Founders purposely omitted exemplary damages when they wrote the Eighth Amendment but intended them to be covered by implication elsewhere" in the Due Process Clause of the Fourteenth Amendment. *Id.*

"Although certainly many advocates of tort reform may feel that punitive damages . . . need to be limited[,] . . . imposing such limits is a policy goal that legislatures will have to achieve." *Id.* at 1090. Policy goals are not within the proper purview of our courts. Therefore, I reject any notion that relies upon the Fourteenth Amendment to invoke a constitutional "line" that should not be "crossed" to achieve a policy goal of constitutionally regulating a claim for punitive or exemplary damages where there is no historical support that it ever was a goal of the Amendment's ratifiers.

*Cooper* involved a grossly disproportionate punitive damages award under another state's punitive damages statute. *See generally Cooper*, 532 U.S. at 426-43. *Cooper* neither involved nor addressed the pleading criteria for a punitive damages claim under Florida's punitive damages statute. *See generally id.*

Neither the United States Supreme Court nor our Florida Supreme Court has ever recognized any federal constitutional protection from a claim merely being asserted for punitive damages. Instead, our Legislature has established a statutory right, with ample procedural due process guarantees, protecting a defendant from a punitive damages claim if the plaintiff is unable to meet the criteria provided in section 768.72, Florida Statutes, to plead a claim for punitive damages. *See* § 768.72(1)–(2), Fla. Stat. (2013).

Thus, while I concur with the en banc majority opinion, I do so without agreeing with the suggestion the citation to *Cooper* makes that our federal constitution provides substantive due process protection from a punitive or exemplary damages claim.

MAY, J., concurring in result only.

I agree with the majority's ultimate decision to reverse, but I cannot agree with the tortured route it takes to get there. The punitive damages statute, section 768.72, Florida Statutes (2013), has been in its present form since 1999, more than twenty years. Trial court judges across this state have applied it with little difficulty, getting it right most of the time. So, I do not see the need to elaborate on the statute's clear language nor to create a labyrinth of obstacles for trial court judges to overcome in making their decisions.

While I appreciate the thorough and extensive work that has gone into the majority opinion, I do not see the need for it. There is no need to discuss statutory construction of the statute's plain language. There is no need to discuss a trial court's review for clear and convincing evidence for punitive damages at the pleading stage. There is no need to blur the distinctions between pleading and proof—i.e., subsections one and two of section 768.72. There is no need to resort to presumptions, to discuss the weighing of evidence, or to discuss "ambiguous" versus "conflicting" proof.

The majority opinion cites to the recent changes made to the Florida Rules of Appellate Procedure concerning nonfinal appeals. But the appellate rules change simply allows us to directly review a trial court's decision on punitive damages at an earlier stage in the litigation, before the case turns down the rabbit hole of the defendant's otherwise confidential financial information. I generally agree with the contents of Judge Gross's and Judge Warner's dissents. But because I believe the majority reached the correct conclusion, which could have been reached by simply applying the statute's clear language, I specially concur in the result only. I have no objection to the certified question.

WARNER, J., dissenting.

Despite stating that the trial court should make the preliminary determination of whether to allow a plaintiff to amend a complaint to include punitive damages without weighing the evidence, the majority states that the trial court must also consider whether the evidence rises to the level of clear and convincing evidence. ("[I]n ruling on a motion to amend, we interpret sections 768.72(1) and (2) to require the trial court to make a preliminary determination of whether a reasonable jury, viewing the totality of proffered evidence in the light most favorable to the movant, could find by clear and convincing evidence that punitive damages are warranted."). This inherently requires a weighing function. I conclude that section 768.72(1) does not allow the trial court to weigh the defendant's evidence against the plaintiff's evidence at the amendment stage. Thus, I disagree with the majority's statement that the court must consider *both* parties' evidence, as this necessitates the weighing of the evidence.

The majority certifies conflict with various Fifth and Second District decisions. I agree with those courts' interpretation of the trial court's duty in determining a motion to amend to allow punitive damages. In *Estate of Despain v. Avante Group, Inc.*, 900 So. 2d 637 (Fla. 5th DCA 2005), the court said:

> [T]he standard that applies to determine whether a reasonable basis has been shown to plead a claim for punitive damages should be similar to the standard that is applied to determine whether a complaint states a cause of action. Within the framework of this standard, we will view the record evidence and the proffer in the light most favorable to [the plaintiff] . . . .

*Id.* at 644 (internal citation omitted).

In *Werner Enterprises, Inc. v. Mendez*, 362 So. 3d 278 (Fla. 5th DCA 2023), the court followed *Despain*:

> Our analysis begins with what a plaintiff must do at the leave to amend stage. Florida law requires the plaintiff to seek the trial court's permission before adding punitive damages to its complaint. § 768.72(1), Fla. Stat. (2022); *see also Bistline v. Rogers*, 215 So. 3d 607, 611 (Fla. 4th DCA 2017) (noting that the "statute requires the trial court to act as a gatekeeper"). To obtain this permission, the plaintiff must make "a reasonable showing" of having "a reasonable basis" for the recovery of punitive damages. § 768.72(1), Fla. Stat. The showing can be based on evidence in the record or evidence proffered by the plaintiff. *Id.* "Proffered evidence is merely a representation" of the evidence that a party proposes to present at trial. *See Grim v. State*, 841 So. 2d 455, 462 (Fla. 2003).
>
> **When deciding if the plaintiff has made the required "reasonable showing" of a "reasonable basis" for recovering punitive damages, the trial court makes a legal determination that is "similar to the standard that is applied to determine whether a complaint states a cause of action."** *Est. of Despain v. Avante Grp., Inc.*, 900 So. 2d 637, 644 (Fla. 5th DCA 2005); . . . Thus, the court asks "whether a reasonable jury could infer" from the proffer that the defendant's conduct satisfies the statutory criteria for punitive damages. *See Varnedore v. Copeland*, 210 So. 3d 741, 747 (Fla. 5th DCA 2017). When completing this task, the court views the proffer in a light most favorable to the plaintiff. *See Est. of Despain*, 900 So. 2d at 644.

*Id.* at 281–82 (emphasis added).

18

Most recently in *Cook v. Florida Peninsula Insurance Co.*, 371 So. 3d 958, (Fla. 5th DCA 2023), the Fifth District again adhered to its position that the trial court must determine whether the plaintiff has pled and offered a reasonable showing to support punitive damages. *Id.* at 961–62. The court recognized that consideration of the plaintiff's proffer and record evidence must be made in the light most favorable to the plaintiff. *Id.* at 961, 963.

The Second District has also rejected the consideration of the "clear and convincing evidence" standard at the pleading stage. In *Deaterly v. Jacobson*, 313 So. 3d 798 (Fla. 2d DCA 2021), the court rejected what the majority here seeks to impose:

> Deaterly conflates the plaintiff's burden of proof at the pleading stage with the burden of proof at trial. The legislature has written section 768.72(1) and (2) such that each subsection applies to distinct stages of the litigation process. The legislature has made it clear what is required for a claimant to plead punitive damages in subsection (1) and the burden of proof upon the claimant at trial in subsection (2). Under subsection (1), a trial court can allow a claimant to add a count for punitive damages after reviewing the evidence and concluding there is a reasonable basis for recovering such damages. It is the plaintiff's burden to submit evidence and make a "reasonable showing" that establishes a reasonable basis for recovering punitive damages. *See Varnedore v. Copeland*, 210 So. 3d 741, 747-48 (Fla. 5th DCA 2017). Subsection (2) clearly expresses the quantum of evidence required at trial to find a defendant liable for punitive damages. The basis for awarding punitive damages against individual defendants is "if the trier of fact, based upon clear and convincing evidence, finds the defendant personally guilty of intentional misconduct." § 768.72(2).
>
> Subsection (1) does not mandate that a trial court require a claimant to prove the entitlement to punitive damages by clear and convincing evidence at the pleading stage. Nor does the statute expressly require the trial court to apply subsection (2) when reviewing a motion to amend the pleadings to add a count for punitive damages. Such a result would circumvent the statute and impair a claimant's ability to plead punitive damages, and no court of this state has the discretion "to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications." *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984) (emphasis omitted) (quoting *Am. Bankers Life Assurance Co. of Fla. v. Williams*, 212 So. 2d 777, 778 (Fla. 1st DCA 1968)).

*Id.* at 801.

What I glean from these cases is that the Second and Fifth Districts review trial court punitive damage amendment orders by assessing the plaintiff's proffer of evidence, not that of the defendants, construing it liberally in favor of allowing the amendment. The majority's approach differs from that of the Fifth and Second Districts by requiring the plaintiff seeking to amend to add punitive damages to offer evidence at the pleading stage of a defendant's liability for punitive damages that the trial court finds would meet the clear and convincing test. Utilizing the "clear and convincing evidence" standard as a criterion to determine whether a plaintiff should be allowed to amend a complaint to state a claim for punitive damages requires the trial court to weigh the quality of the evidence. If the trial court considers conflicting evidence presented by the defendant in evaluating the plaintiff's proffer of a reasonable evidentiary basis for the claim, the trial court becomes engaged in weighing the evidence, a task which is inherently a jury function. The statute differentiates between what is required at the pleading stage and what is required to prevail at trial. We should not add words to the statute or deviate from legislative direction.

Since the enactment of Florida Rule of Appellate Procedure 9.130(a)(3)(G), this court and the other district courts have seen a dramatic increase in nonfinal appeals from orders granting or denying punitive damage claims. I wholeheartedly agree with the majority's certification of conflict with the decisions of the Second and Fifth Districts. I urge our Supreme Court to take up this issue to promote and protect the uniform application of the rule of law on this issue.[11]

GROSS, J., dissenting.

The majority opinion departs from the text of section 768.72(1), Florida Statutes, and unnecessarily complicates the statute's pleading requirement for punitive damages by injecting the concept of "clear and convincing evidence" into a court's pretrial determination.

Section 768.72 establishes a two-level requirement for punitive damages, one at the pleading stage and one at trial.

First, before permitting a claim for punitive damages to be asserted, section 768.72(1) requires there to be "a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery

---

[11] Unlike Judge May, I conclude that the complaint stated sufficient facts supported by evidence to warrant the punitive damage amendment. Peerenboom and Douberley's investigation of the hate mail did not require releasing the results to the media. This amounts to intentional conduct to harm Perlmutter. Providing evidence to law enforcement of a suspected crime does not give Peerenboom and Douberley free rein to also impugn Perlmutter through the publication by the media.

20

of such damages." § 768.72(1), Fla. Stat. (2013). The important word is "reasonable." The statute says it twice.

Second, section 768.72(2) provides that a "defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence." § 768.72(2), Fla. Stat. (2013).

Subsection (1) establishes a pre-trial pleading test; subsection (2) sets forth the more stringent evidentiary test to be applied at trial. This is like other tests applied in the law, such as probable cause to arrest and proof beyond a reasonable doubt at trial. In deciding whether probable cause exists, judges do not view facts through the lens of the proof requirements at trial. "Probable cause" is "a reasonable ground of suspicion supported by circumstances strong enough in themselves to warrant a cautious person in belief that the named suspect is guilty of the offense charged." *Johnson v. State*, 660 So. 2d 648, 654 (Fla. 1995).

Yet, the majority says that "without weighing evidence or witness credibility," a trial judge must "make a preliminary determination of whether a reasonable jury, viewing the totality of proffered evidence in the light most favorable to the movant, could find by clear and convincing evidence that punitive damages are warranted."

The statute's simple two-word test—"reasonable showing"—is consistent with the long-recognized concept of "reasonableness" that appears so often in the law. The majority's 35-word test quoted above is far from simple and not synonymous with a "reasonable showing."

Also, the notion of "clear and convincing evidence" necessarily requires weighing of the evidence,[12] a task the majority says should not be performed.

To rewrite section 768.72(1), the majority employs Latin—it reads that section "*in pari materia*" with section 768.72(2). Instead of relying on the text of

---

[12] The Florida Supreme Court has defined "clear and convincing evidence" as

> an intermediate standard, more than "a preponderance of the evidence," but less than "beyond and to the exclusion of a reasonable doubt." This intermediate level of proof involves both a qualitative and quantitative standard. The evidence must be credible; the memories of the witnesses must be clear and without confusion; and the sum total of the evidence must be of sufficient weight to convince the trier of fact without hesitancy.

*In re Hawkins*, 151 So. 3d 1200, 1212 (Fla. 2014) (citations omitted; some internal quotation marks omitted).

subsection (1), the majority has looked beyond the text to justify an alternative reading. The majority has "forgot[ten], however, *why* context matters: It is a tool for understanding the terms of the law, not an excuse for rewriting them." *King v. Burwell*, 576 U.S. 473, 501 (2015) (Scalia, J., dissenting).

The legislature once considered inserting a "clear and convincing evidence" standard at the pleading stage, but did not include it in the final version of the bill adopting section 768.72(1).

At the session where section 768.72(1) was first adopted, a proposed bill offered by Senators Barron, Mann, Thomas and others contained the following alternate version of the punitive damages statute, which the Legislature ultimately rejected:

> (1) In any action for the recovery of damages based on personal injury or wrongful death, whether in tort or in contract, the plaintiff shall not be allowed to plead for the awarding of punitive damages without first obtaining leave of court. **Leave of the court shall not be granted unless the court is persuaded through clear and convincing evidence that the alleged actions of the defendant provide a legal basis for punitive damages if such allegations are determined to be true by the trier of fact.**

Fla. SB 702 (1986) (proposing the unadopted section 768.047(1), Florida Statutes) (emphasis supplied). The key to the proper analysis of section 768.21(1) is that the Legislature has never adopted a "clear and convincing" standard of proof for punitive damages at the pleading stage.

There are times when judges should abide by one popular understanding of Occam's Razor—that between two competing interpretations of statutory text, the simplest interpretation is likely the correct one. This case is one of those times.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***